**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **JEFFREY GRANT,** | : | **Civil Action No.: 05-3956 (MLC)** |
| **Plaintiff,** | : | |
| **v.** | : | |
| **RONALD H. CATHEL, et al.,** | : | **MEMORANDUM OPINION** |
| **Defendants.** | : | |

**HUGHES, U.S.M.J.**

This matter comes before the Court upon Application by *pro se* Plaintiff, Jeffrey Grant ("Plaintiff"), for Appointment of Counsel pursuant to 28 U.S.C. § 1915 [Docket Entry #8]. Defendant submitted opposition to the Motion. [Docket Entry #10]. The Court has reviewed the written submissions of the parties and considered the matter pursuant to FED. R. CIV. P. 78. For the reasons set forth below, Plaintiff's Application for Appointment of Counsel is denied without prejudice.

## I. BACKGROUND AND PROCEDURAL HISTORY

Since 2003, Plaintiff has been incarcerated in protective custody at New Jersey State Prison ("NJSP"), located in Trenton, New Jersey. Plaintiff's incarceration has been complicated by the effects of non-Hodgkins lymphoma, which Plaintiff contracted in 1996. On or about August 8, 2005, Plaintiff, proceeding *pro se*, filed a Complaint in United States District Court for the District of New Jersey seeking injunctive and compensatory relief related to allegations that state prison officials and contracted medical providers were deliberately indifferent to Plaintiff's medical needs related to his cancer. The named Defendants are Ronald Cathel (Administrator of NJSP), Dr. Hannah Manar

(CMS[1] resident doctor at NJSP), Dr. George Achebe (CMS head doctor at NJSP), Dr. Deborah Anicette (CMS administrative assistant), and Devon Brown (New Jersey Department of Corrections Commissioner).

Concurrent to filing the Complaint, Plaintiff also filed a Motion for a Temporary Restraining Order requesting that Defendants be prevented from denying Plaintiff pain medications that were prescribed earlier by a doctor at an outside medical facility. [Docket Entry #1]. The Court further notes that not all Defendant medical providers have answered the Complaint.

Plaintiff asserts that he suffers from a non-curable form of non-Hodgkins lymphoma. Despite receiving chemotherapy at an unspecified time, Plaintiff claims that the cancer effects his lymph nodes and internal organs, causing swelling and severe pain. Based on Plaintiff's complaint, it appears that Plaintiff receives in-house treatment from CMS doctors, including the administration of pain medications. Based on Plaintiff's submissions, Plaintiff also receives treatment from St. Francis Medical Center, and in particular, receives prescriptions for pain medication from an Oncologist who is both a medical specialist at St. Francis and a contract employee of CMS.

Pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendants were deliberately indifferent to his health and safety in violation of the Eighth Amendment, as well as grossly negligent. (Pl.'s Compl. ¶¶ 65-79). Specifically, Plaintiff alleges that on numerous occasions between January 2004 and April 2005, Defendant medical provider doctors (CMS) arbitrarily provided Tylenol in place of the pain medications Oxycontin and Darvacette as prescribed by a St. Francis Medical Center oncologist. Plaintiff cites a personal dispute between the Medical Center's oncologist and Defendant

---

[1]CMS(Correctional Medical Services)is a third party civilian contractor contracted by the State to provide in-house medical services to NJSP facilities.

medical providers as the reason that the CMS doctors would not administer the prescribed medication. Plaintiff further alleges that Defendant medical providers failed to re-schedule Plaintiff for missed laboratory work and medical treatment at St. Francis Medical Center.

Plaintiff additionally alleges that Defendant state prison officials were deliberately indifferent to Plaintiff's medical needs by failing to act on Plaintiff's written complaints regarding CMS' conduct. Plaintiff also claims that Defendants failed to provide security personnel to escort him to St. Francis Medical Facility for doctors visits and laboratory work. Plaintiff further alleges that Defendant State Prison Officials failed to re-schedule these missed appointments. Finally, Plaintiff alleges that Defendant State Prison Officials were deliberately indifferent to Plaintiff's medical needs by failing to adequately supervise third party medical contractor CMS.

By Court Order dated August 25, 2005 [Docket Entry #2], the District Court denied Plaintiff's motion for a Temporary Restraining Order. The District Court also ordered that Plaintiff could proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and (b), and additionally provided that Plaintiff could apply for Appointment of Counsel.

In the present Application before the Court, Plaintiff argues that he will need the assistance of an attorney due to the debilitating effects of non-Hodgkins lymphoma. (Pl.'s App. ¶ 3). Plaintiff argues that Defendants' deliberate indifference by failing to provide effective treatment "exacerbates [his] infirmities...which impedes [his] ability to realize, understand, and present the complexities of this matter." *Id*. "This gives the defendants an unfair advantage as it is through their deliberate indifference which directly deprives [him] of the ability to function without the debilitating effects from the disease." *Id*. Plaintiff further argues that although he has been assisted by others in filing pleadings and motions, he requires an attorney due to his "lack of training in the legal and medical

professions that should be a barrier to the effective presentation of [his] claims." *Id*. Plaintiff also claims that his close-custody confinement limits his access to the law library, research materials and records. *Id*. Plaintiff admits that the legal issues may not be complex, but asserts expert medical testimony may be required. *Id*. Finally, Plaintiff claims that this case includes "exceptional circumstances." *Id*.

Defendant opposes Plaintiff's Motion for Appointment of Counsel. Defendant argues that Plaintiff has "neither a constitutional or statutory right to counsel." (Def.'s Ltr. Mem. at 1) (citing *Parham v. Johnson,* 126 F.3d 454, 456-57 (3d Cir. 1997)). Defendant also argues that Plaintiff's claim of deliberate indifference "has no basis in law or fact." *Id*. at 6. Moreover, Defendant argues that Plaintiff "has already demonstrated that he has the capacity to effectively present his claims without appointed counsel." *Id*. Defendant additionally asserts that Plaintiff already possesses the evidence necessary to prove his allegations, if true, and therefore does not require the assistance of counsel. *Id*. The State further contends that expert testimony will not be necessary. *Id*. Finally, the State argues that Plaintiff's § 1983 claims must be dismissed because the claims rely solely on a theory of *respondeat superior*. *Id*.

The Court conducted a video conference with Plaintiff and counsel for Defendants on February 8, 2006. After conducting the video conference, the Court ordered Defendant CMS to "arrange for an oncologist to review Plaintiff's case to determine whether narcotic pain medication is medically appropriate." [Docket Entry #25]. On March 22, 2006, Defendant CMS submitted an updated status report on Plaintiff's medical condition, signed by Dr. Abdul Mughal, to the Court. Dr. Mughal concluded that Plaintiff's "evaluation did not show any evidence of recurrent lymphoma." (Mughal Report at ¶ 3).

## II. DISCUSSION

Pursuant to § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). "Indigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel." *Montgomery v. Pinchak,* 294 F.3d 492, 498 (3d Cir. 2002) (citing *Parham v. Johnson,* 126 F.3d at 456-57). Nevertheless, the Third Circuit "has interpreted § 1915 as affording district courts 'broad discretion' to determine whether appointment of counsel in a civil case would be appropriate." *Id.*

The criteria for when counsel should be appointed was first articulated by the Third Circuit in *Tabron v. Grace,* 6 F.3d 147, 155 (3d Cir. 1993). As a threshold matter, the Court must evaluate the merits of the plaintiff's claim. *Id.* If the Court determines that the claim does have "arguable merit in fact and law," then additional factors should be considered, including:

1. The plaintiff's ability to present his or her own case;
2. The difficulty of the particular legal issues;
3. The degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation;
4. The plaintiff's capacity to retain counsel on his or her own behalf;
5. The extent to which a case is likely to turn on credibility determinations, and;
6. Whether the case will require testimony from expert witnesses.

*Tabron,* 6 F.3d at 155-57. The Third Circuit "ha[s] noted that 'this list of factors is not exhaustive, but should serve as a guidepost for the district courts.'" *Montgomery,* 294 F.3d at 499 (citations omitted). Furthermore, "courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases." *Id.*

For purposes of this Application, the Court shall assume that Plaintiff has presented a

meritorious claim. However, after considering the *Tabron* factors, the Court finds that the concerns raised by Plaintiff at this time do not rise to the level of "special circumstances" that would warrant the appointment of counsel.

In considering the first factor, the Court must assess the plaintiff's ability to present his or her case. The Court should consider "the plaintiff's education, literacy, prior work experience, and prior litigation experience, along with the plaintiff's ability to understand English, and the restraints placed upon a prisoner by confinement." *Montgomery,* 299 F.3d at 501 (quoting *Tabron*, 6 F.3d at 156); *see also Parham v. Johnson,* 126 F.3d at 459 (cautioning that these factors "are not always determinative," but they "should be considered in each meritorious case."). In the present case, Plaintiff filed a (37) thirty-seven page typed Complaint that alleges claims, facts and the relief sought with particularity. For example, the Complaint ties factual allegations to specific Defendants on particular dates. Plaintiff also filed a detailed (18) eighteen page typed Motion for a Temporary Restraining Order. The Motion included affidavits from four fellow inmates, one of whom has been assisting Plaintiff with preparing the papers filed with the Court. In addition, the record before the Court does not suggest that, with the exception of medical expert testimony, there may be complex discovery rules which would disadvantage the Plaintiff in the present matter. (*See Montgomery v. Pinchak,* 294 F.3d at 501-502) (referring to *Parham,* 126 F.3d at 459). Therefore, the Court finds that Plaintiff is capable of preparing his case for trial and that the appointment of counsel is not needed at this time.

As for the second factor, the complexity of the legal issues involved, courts have indicated that if either the ultimate legal issue or the presentation of the claim is complex, such a fact weighs in favor of the appointment of counsel. "Simplicity in the allegation supporting the claim does not

translate into simplicity in the presentation of the claim." *Parham,* 126 F.3d at 459. Specifically, the Third Circuit "has already held that a § 1983 civil rights case alleging deliberate indifference to a prisoner's serious medical needs can raise sufficiently complex legal issues to require appointment of counsel." *Montgomery,* 294 F.3d at 502 (citing *Parham,* 126 F.3d at 459). Similar to these and other Third Circuit cases, this case presents specific allegations regarding the Defendants' deliberate indifference to Plaintiff's medical needs. In his Complaint and Motion for Temporary Restraining Order, Plaintiff alleges that on specific dates between January 2004 and April 2005, CMS' doctors Achebe, Anicette and Manar, did not administer to Plaintiff two pain killers, Oxycontin and Darvacette, as previously prescribed by an oncologist at St. Francis Medical Center. Similarly, Plaintiff's allegations that Defendants violated their duty to provide adequate medical care by not rescheduling laboratory and medical appointments raises complex issues as to whether the Plaintiff's medical conditions warranted rescheduling those appointments and also weighs in favor of appointing counsel. Concerned about these allegations, the court conducted a video conference with Plaintiff on November 8, 2005 and ordered a current medical examination. After reviewing the consultation report signed March 22, 2006, wherein Dr. Abdul Mughal concludes that Plaintiff's "evaluation did not show any evidence of recurrent lymphoma," the Court notes that such medical care appears not to have been necessary at the time of the allegations.

Finally, Plaintiff's allegations that State Defendants failed to provide requisite escort for laboratory and medical reports are straight forward administrative issues and therefore, this particular allegation does not weigh in favor of appointment of counsel.

Regarding the third factor, the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such, "courts should consider a prisoner's inability to gather facts

relevant to the proof of his claim." *Id.* at 503. In the present case, Plaintiff contends that his confinement in protective custody limits his access to "the law library, research materials, or records." (Pl.'s App. at 3). These limitations should not, however, limit Plaintiff's ability to conduct initial factual investigation relevant to his claim that Defendants were deliberately indifferent to his medical needs as Plaintiff was a witness to the alleged events at issue.

Plaintiff has also received assistance from other inmates in filing pleadings and motions. Although Plaintiff suffered from non-Hodgkins lymphoma, Plaintiff, with the assistance from fellow inmates, should be able to conduct relevant factual investigation and elicit further information by serving interrogatories and requests for documents under Fed. R. Civ. P. 34 and 33, respectively. *See* FED. R. CIV. P. 33; *see also* FED. R. CIV. P. 34. Further, as mentioned above, the Court conducted a video conference on February 8, 2006 to assess Plaintiff's ability to continue with this case as a *pro se* Plaintiff. As a result, a new evaluation of Plaintiff's condition was requested. On March 22, 2006, Defendant CMS submitted the report of Dr. Mughal which found that a new evaluation of Plaintiff's medical condition "did not show any evidence of recurrent lymphoma." Thus, the Court concludes that Plaintiff's ability to represent himself in this matter is not impaired by his medical condition. Finally, should the factual investigation required by Plaintiff exceed his capabilities, the Court could intervene in the discovery process. Therefore, at this time, Plaintiff's ability to conduct factual investigation does not weigh in favor of appointment of counsel.

The fourth factor, the capacity of the plaintiff to retain counsel, can be determined by the plaintiff's financial situation. Plaintiff contends that he is unable to obtain counsel due to his poverty. (Pl's App. at 3). Moreover, Plaintiff claims that he has presented his case to two law firms but has been unsuccessful in any attempt to hire an attorney or engage counsel on a contingency fee basis.

*Id*. While the Court is mindful that the Plaintiff has been incarcerated since 2003 and placed in protective custody, the Court notes that financial difficulties alone do not warrant the appointment of counsel.

As for the fifth factor, the Third Circuit has instructed that " when considering the role of credibility determinations as a factor, 'courts should determine whether the case [will be] solely a swearing contest'" *Montgomery v. Pinchak,* 294 F.3d at 505 (quoting *Parham,* 126 F.3d at 460). Therefore, where there are witness credibility or factual disputes at issue, courts have favored the appointment of counsel. *See Tabron v. Grace,* 6 F.3d at 156. As discussed above, this case concerns whether third party medical providers and State prison officials were deliberately indifferent to Plaintiff's medical needs. While credibility is important in every case, the allegations here could be largely substantiated by medical records and documents that could be obtained by Plaintiff through discovery. With this in mind, any factual disputes or witness credibility issues in this matter do not currently weigh in favor of the appointment of counsel. However, when the factual determination of Plaintiff's medical needs becomes the object of expert testimony, witness credibility becomes more of an issue. Moreover, Plaintiff has submitted the affidavits of four fellow inmates, and their credibility may also be called into question. Thus, while witness credibility or issues of factual dispute may not initially warrant the appointment of counsel, the Court may appoint counsel at any point during the proceedings if necessary.

Finally, the sixth factor requires the Court to ask if the Plaintiff would require expert testimony in the presentation of his case. The Third Circuit "has recognized the need for expert testimony in proving a claim based on medical injury." *Id.* at 504. A plaintiff "would especially benefit from expert testimony [when] he lacks the medical records that he might otherwise use to

demonstrate his alleged injury to a jury." *Id.* Such a case would weigh in favor of the appointment of counsel. Plaintiff claims that he received medical care related to non-Hodgkins lymphoma at St. Francis Medical Center on various occasions since his incarceration in 2003. The Plaintiff describes what treatment was prescribed and subsequently denied by the Defendant. Therefore, the probable need for medical experts weighs in favor of appointment of counsel.

In summary, the probable need of expert testimony and Plaintiff's inability to retain counsel, may weigh in favor of appointment of counsel. However, based on the literate and detailed pleadings and motions submitted thus far by Plaintiff, with the assistance of fellow inmates, Plaintiff has demonstrated an ability to present his case clearly to this point. The Court also notes that Plaintiff may conduct factual investigation to substantiate his claims through standard discovery procedures such as interrogatories and requests for documents. Moreover, the newly submitted medical evaluation demonstrates Plaintiff's stable medical condition. The Court does recognize, however, that Plaintiff that the medical nature of this case could lead to factual disputes and include complex legal issues. To that end, the Court notes that pursuant to 28 U.S.C. § 1915(d), the Court may appoint counsel at any stage of the litigation, up to and including the trial, and appointment may be made *sua sponte*. *Tabron,* 6 F.3d at 157. *Tabron* should not, however, be interpreted to invite repeated applications for the appointment of counsel absent significant change in applicable circumstances mentioned above.

## III. CONCLUSION

For the reasons stated herein, Plaintiff's Application for Appointment of Counsel is denied without prejudice. An appropriate Order accompanies the Memorandum Opinion.

Dated: April 25, 2006