**NOT FOR PUBLICATION**

```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
                                        :
JEFFREY GRANT,                          :   CIVIL ACTION NO. 05-3956 (MLC)
                                        :
     Plaintiff,                         :   MEMORANDUM OPINION
                                        :
     v.                                 :
                                        :
RONALD H. CATHEL, et al.,               :
                                        :
     Defendants.                        :
                                        :
```

**COOPER, District Judge**

Pro se plaintiff, Jeffrey Grant ("Grant"), commenced this action on August 8, 2005 alleging that medical and administrative personnel at the New Jersey State Prison in Trenton ("Prison") where he is currently incarcerated violated his civil rights under 42 U.S.C. § ("Section") 1983. (Compl.) Defendant Manar Hanna, incorrectly named in the complaint as Dr. Hannah Manar, ("Hanna"), moves for summary judgment, in effect, pursuant to Federal Rule of Civil Procedure ("Rule") 56(c). (Dkt. entry no. 40.) Grant has not opposed the motion. The Court, for the reasons stated herein, will grant the motion.

### BACKGROUND

Grant has Non-Hodgkin's Lymphoma, which is currently in remission. (Compl., at ¶ 8; Hanna's Statement of Undisputed Material Facts, at ¶ 8.) While incarcerated, Grant received chemotherapy, and was prescribed pain and other types of medications for his condition. (Hanna's Statement of Undisputed

Material Facts, at ¶¶ 14, 153-182.)  He was also examined by several nurses and medical doctors, including oncologists.  (Id. at ¶¶ 60, 64, 67, 69, 74-75, 78, 86, 89, 91, 95, 97, 99, 101, 119, 122, 129, 131-133, 135-136, 139-144.)  Grant met with Hanna, one of the Prison's resident doctors, on April 13, 2005.  (Compl. at ¶ 18.)  Grant asserts that Hanna reviewed his medical charts and engaged in a short discussion with him regarding his condition.  (Id.)  Grant further asserts that Hanna informed him that "even though he understands [Grant's] need to have pain medication because of the cancer and because the Oncologist ordered that [Grant] be given that particular medication, he didn't believe in giving inmates narcotics for pain."  (Id.)

    Grant sent numerous letters to the Prison's administration complaining that he was receiving insufficient medical attention. (Id. at ¶ 2.)  On March 16, 2004, Grant sent a letter to the prison administrator noting that he had previously written numerous letters to the administration complaining about the lack of medical attention he received, and stating that he intended to "take the issues out of the administration [sic] hands if they didn't respond to this letter."  (Id.)  When Grant did not receive a response, he sent letters to then New Jersey Governor Jim McGreevey regarding his predicament.  (Id. at ¶ 3.)  In response, Grant received two letters from Richard P. Cevasco, Assistant Director of the Health Services Unit, which stated that

2

Grant's letters to Governor McGreevey had been forwarded to the Correctional Medical Services Administration ("CMS"). (Id. at ¶¶ 4-6.)

Grant received what he characterizes as "patronizing responses" from CMS. (Id. at ¶¶ 5-6.) Nevertheless, Grant received a subsequent letter on January 11, 2005 from Carl Ausfahl, Ombudsman for CMS, which stated, inter alia, "[m]ultiple entries in the medical record note that you are achieving relief from your pain." (Id. at ¶ 10.) Grant asserts that because he continued to experience excruciating pain, in April 2005 he was forced to submit a Prison Administrative Remedy Form to the Prison's administrator. (Id. at ¶ 13.) The Prison's administrator responded to the Administrative Remedy Form and concluded that no remedy was necessary because "[o]n April 11, 2005 Mr. Grant was seen by the doctor - April 12, 2005 Emergency Room consultation. On April 14 & 15th Mr. Grant was a "NO SHOW" for needed Lab work." (Id. at ¶ 14.) Nevertheless, Grant believes he has been continually refused "the prescribed cancer treatment regimen and medication", and thus, he commenced this Section 1983 action against the Prison administrator, a CMS administrative assistant, the Commissioner of the New Jersey Department of Corrections, and several Prison doctors, including Hanna. (Id.)

3

**DISCUSSION**

**I.   Summary Judgment Standard**

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  <u>Anderson</u>, 477 U.S. at 249.  Under this standard, the "mere existence of a scintilla of evidence in support of the

[non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law.  Id. at 248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (internal citations omitted).

    A movant is not automatically entitled to summary judgment simply because the non-movant fails to oppose the motion. Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990).  Instead, Rule 56(e) provides that the Court may grant the unopposed motion "if appropriate".  Id.; Carp v. Internal Rev. Serv., No. 00-5992, 2002 U.S. Dist. LEXIS 2921, at *7 (D.N.J. Jan. 28, 2002) ("Even where the non-moving party has failed to establish a triable issue of fact, summary judgment will not be granted unless 'appropriate.'").  An unopposed motion

is appropriately granted when the movant is entitled to judgment as a matter of law.  Anchorage Assocs., 922 F.2d at 175.

"If the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court 'will accept as true all material facts set forth by the moving party with appropriate record support.'" Carp, 2002 U.S. Dist. LEXIS 2921, at *6-*7 (citations omitted). Further, even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." Morris v. Orman, No. 87-5149, 1989 U.S. Dist. LEXIS 1876, at *25-*26 (E.D. Pa. Mar. 1, 1989). Accordingly, when a plaintiff fails to respond to a defendant's motion for summary judgment, the Court need only examine the pleadings and any evidence attached to the defendant's motion. Atkinson v. City of Phila., No. 99-1541, 2000 U.S. Dist. LEXIS 8500, at *7 (E.D. Pa. June 20, 2000).

**II.  Section 1983 and the Eighth Amendment**

A plaintiff asserting civil rights violations under Section 1983 must establish that the defendant acted under color of state law to deprive him or her of a right secured by the United States Constitution or the laws of the United States. Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does

6

not create substantive rights, but instead provides a remedy for the violation of rights created by other federal laws.  Id.; Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (noting that Section 1983 does not, by itself, create rights, but instead provides remedies for deprivation of rights established by Constitution or other federal laws).

For a plaintiff's Section 1983 claims to survive a motion for summary judgment there must be a genuine issue of fact as to whether the defendant (1) acted under color of state law; or (2) deprived the plaintiff of a federal right.  Groman, 47 F.3d at 633.  "The color of state law element is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law."  Id. at 638.  Further, officials may be liable under Section 1983 for the acts of those over whom they have supervisory responsibility.  However, civil rights liability cannot be predicated solely on the doctrine of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Personal involvement in the alleged wrong-doing must be shown.  Id.  There is no dispute here that Hanna, a doctor employed by the Prison, acted under the color of state law.

Once it has been established that the defendant acted under color of state law, the Court must identify the federal right the defendant allegedly violated.  See Groman, 47 F.3d at 633.  Here, Grant alleges that Hanna violated his Eighth Amendment right to

7

be free from cruel and unusual punishment by refusing to provide Grant with pain medication for his cancer.  (Compl., at ¶ 69.)  Grant further alleges that in refusing to provide him with the pain medication, Hanna was "deliberately indifferent" to his medical needs and denied him adequate medical care.  (Id. at ¶ 70.)

"[D]eliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment, which is applicable to the states through the Fourteenth Amendment, because it constitutes "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  Helling v. McKinney, 509 U.S. 25, 32 (1993).  Accordingly, to succeed on an Eighth Amendment medical-care claim, an inmate must establish that (1) he has a serious medical need, and (2) prison officials were deliberately indifferent to such medical need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  A medical need is considered serious if it is one a physician would diagnose as requiring treatment or one that a lay person would easily recognize as needing a doctor's attention.  Monmouth County Corr. Inst'l Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  Further, if denial or delay causes "unnecessary and wanton infliction of pain", a life-long handicap, or permanent loss, the medical need is considered serious.  Id.

"Where prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest.'" Lanzaro, 834 F.2d at 343 (internal citations omitted). Deliberate indifference is also manifest when prison officials "erect arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates." See id. at 347 (internal quotations and citations omitted). However, claims of negligence or malpractice are not sufficient to establish "deliberate indifference". Rouse, 182 F.3d at 197; see White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990) ("Mere medical malpractice cannot give rise to a violation of the Eighth Amendment."). Thus, in order to state a cognizable claim for failure to provide medical care in violation of the Eighth Amendment, a prisoner must allege acts or omissions that are sufficiently harmful to offend "evolving standards of decency". Estelle v. Gamble, 429 U.S. 97, 106 (1976).

**III. Grant's Claims Against Hanna**

    **A.   Grant's Deliberate Indifference and Cruel and Unusual Punishment Claims Against Hanna**

There is no disputing that Grant's Non-Hodgkin's Lymphoma constitutes a serious medical condition, or that any delay in treating this condition could result in a life-long handicap or permanent loss. See Lanzaro, 834 F.2d at 347. Nevertheless,

Hanna contends that Grant's medical records indicate that he did receive medical attention on an ongoing basis. (Hanna Br., at 5.) Hanna further contends that the medical care provided "is set forth in considerable detail beginning in the year 2003 and demonstrates that [Grant] received medication for his Non-Hodgkin's Lymphoma inclusive of pain medication, chemotherapy and that [Grant's] Non-Hodgkin's Lymphoma is in remission." (Id.) Hanna argues that Grant's deposition testimony and medical records indicate that, inter alia, he was (1) routinely treated by oncology, (2) observed using routine blood tests and radiologic studies, and (3) treated for abdominal complaints with both hospitalization and radiologic studies. (Id. at 6.) Therefore, Hanna argues that "[t]here are no facts to support any causes of action in this case for deliberate indifference to [Grant's] serious medical needs but for [his] unsubstantiated allegations." (Id.)

Hanna has met his burden of demonstrating prima facie entitlement to summary judgment on Grant's deliberate indifference and cruel and unusual punishment claims against him. In support of the motion, Hanna has submitted a Statement of Undisputed Material Facts and a number of documentary exhibits, including Grant's medical records. (Dkt. entry no. 40.) Accordingly, the burden shifts to Grant to show that genuine issues of material fact do exist. See Anderson, 477 U.S. at 249.

10

However, Grant has not submitted any objections, memoranda, affidavits, or other documents in opposition to the motion for summary judgment.  In the complaint, Grant alleges, inter alia, that Hanna's refusal to prescribe him pain medication for his cancer (1) constituted cruel and unusual punishment in violation of the Eighth Amendment, and (2) denied Grant adequate medical care and placed his life and health in danger.  (Compl., at ¶¶ 69-70.)  He cannot, however, rely on these mere allegations to defeat a motion for summary judgment.  Thus, Grant has failed, by definition, to bring to this Court's attention any evidence that could conceivably raise any genuine issue of material fact as to his deliberate indifference and cruel and unusual punishment claims against Hanna.  Therefore, this Court holds that entering summary judgment in favor of Hanna on Grant's deliberate indifference and cruel and unusual punishment claims is "appropriate" in the present case.  See <u>Anchorage Assocs.</u>, 922 F.2d 168 at 175.

    **B.    Grant's Gross Negligence Claim Against Hanna**

Summary judgment is also appropriate on Grant's medical negligence claim against Hanna because Grant has failed to comply with the requirements of the New Jersey Affidavit of Merit Statute, N.J.S.A. § 2A:53A-26, <u>et</u> <u>seq.</u>, which is applicable to such claims.  The Affidavit of Merit Statute provides that a plaintiff alleging medical malpractice or negligence must:

11

>     within 60 days following the date of filing of the
>     answer to the complaint by the defendant, provide each
>     defendant with an affidavit of an appropriate licensed
>     person that there exists a reasonable probability that
>     the care, skill or knowledge exercised or exhibited in
>     the treatment, practice or work that is the subject of
>     the complaint, fell outside acceptable professional or
>     occupational standards or treatment practices.

N.J.S.A. § 2A:53A-27.  The court may grant an additional sixty days to file the affidavit, if the plaintiff demonstrates "good cause.  Id.  The plaintiff need not comply with this affidavit requirement if he or she provides a sworn statement that (1) the plaintiff sent a written request for medical records to the defendant, (2) the defendant failed to provide the requested medical records within 45 days of the request, and (3) the requested medical records have a "substantial bearing" on preparation of the affidavit.  N.J.S.A. § 2A:53A-28.

"The overall purpose of the statute is to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of litigation."  Cornblatt, P.A. v. Barow, 708 A.2d 401, 412 (N.J. 1998).  If the plaintiff fails to submit the required affidavit or a statement that the defendant did not provide requested medical records, then the plaintiff is deemed to have failed to state a cause of action.  N.J.S.A. § 2A:53A-29.  Thus, failure to submit an affidavit of merit results in dismissal of the plaintiff's negligence or malpractice claim and such dismissal is with prejudice.  See Cornblatt, P.A., 708

12

A.2d at 415 (explaining that dismissal based on plaintiff's failure to submit affidavit of merit would be with prejudice absent extraordinary circumstances).

Grant contends that Hanna's refusal to prescribe him pain medication for his cancer constituted gross negligence with respect to his medical responsibilities and duties to Grant. (Compl., at ¶ 71.)  However, Grant has failed to submit an affidavit from a licensed medical professional stating that the care, skill, or knowledge Hanna exercised in treating Grant did not meet professional medical standards.  See N.J.S.A. § 2A:53A-28.  Grant also has not submitted a sworn statement that he sent a written request for medical records to Hanna and Hanna failed to provide such records.  See N.J.S.A. § 2A:53A-28.  Moreover, as previously discussed, Grant has not opposed the motion for summary judgment, and he cannot rely solely on the unsupported allegations of the complaint to defeat the motion.  See Anderson, 477 U.S. at 249 (explaining that there is no genuine issue for trial unless there is significant evidence upon which a jury could return a verdict for the non-moving party).  Thus, because Grant has failed to (1) comply with the Affidavit of Merit Bill, and (2) present any evidence that could conceivably create a genuine issue of material fact, this Court concludes that granting summary judgment on Grant's medical negligence claim against Hanna is appropriate under the circumstances.  See Anchorage Assocs., 922 F.2d 168 at 175.

13

**CONCLUSION**

The Court, for the reasons stated <u>supra</u>, will (1) grant the motion, and (2) enter judgment in favor of Hanna. An appropriate order and judgment will be issued.

       s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge