**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JEFFREY GRANT, | : | CIVIL ACTION NO. 05-3956 (MLC) |
| Plaintiff, | : | **MEMORANDUM OPINION** |
| v. | : | |
| RONALD H. CATHEL, et al., | : | |
| Defendants. | : | |

**COOPER, District Judge**

Pro se plaintiff, Jeffrey Grant ("Grant"), commenced this action on August 8, 2005, alleging that medical and administrative personnel at the New Jersey State Prison in Trenton ("Prison") where he is currently incarcerated violated his civil rights under 42 U.S.C. § ("Section") 1983. (Compl.) Defendants Ronald Cathel ("Cathel") and Devon Brown ("Brown" and together with Cathel, the "Moving Defendants") move for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. (Dkt. entry no. 51.) Grant has not opposed the motion. The Court, for the reasons stated herein, will grant the motion.

### BACKGROUND

**I. Grant's Medical Treatments**

Grant has Non-Hodgkin's Lymphoma, which is currently in remission. (Compl., at ¶ 8; Moving Defs. Stmt. of Material Facts, at ¶¶ 9 & 21.) Correctional Medical Services ("CMS") is the medical provider for the New Jersey Department of

Corrections, including the Prison. (Moving Defs. Stmt. of Material Facts, at ¶ 1.) While incarcerated, Grant received continuous medical care and monitoring from CMS personnel and was escorted to Saint Francis Medical Center for additional treatments. (Id. at ¶¶ 2, 4, & 12.) Specifically, Grant received chemotherapy and lab work, and was prescribed pain and other types of medications for his condition. (Id. at ¶¶ 4, 6, 8, 10, & 12.) He also was examined by several nurses and medical doctors, including oncologists. (Id. at ¶¶ 9-10, 13-15, 17, & 19-21.)

Grant met with one of the Prison's resident doctors, Dr. Manar Hanna ("Hanna"), incorrectly named in the complaint as Dr. Hannah Manar, on April 13, 2005. (Compl., at ¶ 18; see dkt. entry no. 40.) Grant asserts that Hanna reviewed his medical charts and engaged in a short discussion with him regarding his condition. (Compl., at ¶ 18.) Grant further asserts that Hanna informed him that "even though he understands [Grant's] need to have pain medication because of the cancer and because the Oncologist ordered that [Grant] be given that particular medication, he didn't believe in giving inmates narcotics for pain." (Id.)

Grant sent numerous letters to the Prison's administration complaining that he was receiving insufficient medical attention. (Id. at ¶ 2.) On March 16, 2004, Grant sent Cathel, the Prison's

Administrator, a letter noting that he had previously written numerous letters to the administration complaining about the lack of medical attention he received, and stating that he intended to "take the issues out of the administration [sic] hands if they didn't respond to this letter." (Id.)  When Grant did not receive a response, he sent letters to then New Jersey Governor McGreevey regarding his predicament. (Id. at ¶ 3.)  He also sent a letter to Brown, the Commissioner of the New Jersey Department of Corrections, stating that CMS and Cathel were denying him medical care. (Id. at ¶ 43 & 44.)  In response, Grant received two letters from Richard P. Cevasco, Assistant Director of the Health Services Unit, which stated that Grant's letters to Governor McGreevey and Brown had been forwarded to CMS. (Id. at ¶¶ 4-6, 48-49, & 52-53.)

Grant received what he characterizes as "patronizing responses" from CMS. (Id. at ¶¶ 5-6, 50, & 54.)  Thus, Grant sent subsequent letters to Cathel stating that (1) "he was having difficulty being escorted from the close custody protective custody unit to the clinic and receiving appropriate medical attention from [CMS] personnel", and (2) "without [Cathel's] immediate intervention [Grant's] fight against Non-Hodgkins Lymphoma would end soon as [his] body was bloating badly and the pain had gotten worse then it had ever been." (Id. at ¶¶ 7-8.)  Grant sent Brown a copy of one of his letters to Cathel, and

3

asked Brown to intervene in his medical issues.  (Id. at ¶ 56.) Although Grant did not receive a response from either Brown or Cathel, he did receive a letter on January 11, 2005 from Carl Ausfahl, Ombudsman for CMS, which stated, inter alia, "[a] review of your medical records reveals that you are being given Darvacet for the pain associated with your Non-Hodgekins Lymphoma. Multiple entries in the medical record note that you are achieving relief from your pain."  (Id. at ¶¶ 9-10 & 57.)

**II.   The Prison's Internal Grievance Procedure**

The Prison has adopted an Inmate Handbook, which sets forth administrative remedy procedures that "give the inmate population a way to bring complaints, problems, and suggestions to the attention of the Administration at [the Prison] to resolve or possibly put into use."  (Moving Defs. Stmt. of Material Facts, at ¶ 23.)  Specifically, an inmate may submit an Administrative Remedy Form ("ARF"), which is available through the housing unit officers, social workers, or the law library,  by placing it in a designated box within the Prison.  (Id. at ¶¶ 24-25.)  ARFs are processed by the Administrative Remedy Coordinator, who reviews each ARF and distributes them to the appropriate Prison department.  (Id. at ¶¶ 26-27.)  A staff member in the appropriate department responds to the ARF and such response is forwarded to an Assistant Superintendent to review and co-sign. (Id. at ¶¶ 27-28.)  The ARF is then returned to the

4

Administrative Remedy Coordinator, who forwards it to the inmate. (Id. at 28.)

Grant asserts that because he was not being afforded "the prescribed cancer treatment regime and medication" and continued to experience excruciating pain, he was forced to submit an ARF in April 2005. (Compl. at ¶ 13.) Grant received a response to the ARF stating "[o]n April 11, 2005 Mr. Grant was seen by the doctor - April 12, 2005 Emergency Room consultation. On April 14 & 15th Mr. Grant was a "NO SHOW" for needed Lab work." (Id. at ¶ 14.) Grant did not submit an ARF expressly alleging that he was not provided an escort from protective custody to his medical appointments or that the Moving Defendants failed to supervise the medical care CMS provided to him. (Moving Defs. Stmt. of Material Facts, at ¶ 30.) Instead, Grant commenced this Section 1983 action against the Moving Defendants, a CMS administrative assistant, and several Prison doctors, in which he makes such allegations. (See Compl.)

**DISCUSSION**

**I.   Summary Judgment Standard**

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

5

Fed.R.Civ.P. 56(c).  The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

    The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  <u>Anderson</u>, 477 U.S. at 249.  Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]."  <u>Id.</u> at 252.  "By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."

Id. at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law.  Id. at 248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (internal citations omitted).

    A movant is not automatically entitled to summary judgment simply because the non-movant fails to oppose the motion.  Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990).  Instead, Rule 56(e) provides that the Court may grant the unopposed motion "if appropriate".  Id.; Carp v. Internal Rev. Serv., No. 00-5992, 2002 U.S. Dist. LEXIS 2921, at *7 (D.N.J. Jan. 28, 2002) ("Even where the non-moving party has failed to establish a triable issue of fact, summary judgment will not be granted unless 'appropriate.'").  An unopposed motion is appropriately granted when the movant is entitled to judgment as a matter of law.  Anchorage Assocs., 922 F.2d at 175.

    "If the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court 'will accept as true all material facts set forth by the moving party with appropriate record support.'"  Carp, 2002 U.S. Dist. LEXIS 2921, at *6-*7 (citations omitted).  Further, even if a record contains facts that might provide

support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." Morris v. Orman, No. 87-5149, 1989 U.S. Dist. LEXIS 1876, at *25-*26 (E.D. Pa. Mar. 1, 1989). Accordingly, when a plaintiff fails to respond to a defendant's motion for summary judgment, the Court need only examine the pleadings and any evidence attached to the defendant's motion. Atkinson v. City of Phila., No. 99-1541, 2000 U.S. Dist. LEXIS 8500, at *7 (E.D. Pa. June 20, 2000).

**II.  Exhaustion of Administrative Remedies**

The Prisoner Litigation Reform Act ("PLRA") requires a prisoner to exhaust all available administrative remedies prior to commencing an action under Section 1983.  42 U.S.C. § 1997e. Specifically, the PLRA provides:

> No action shall be brought with respect to prison conditions under [Section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Id.[1]  The exhaustion of all administrative remedies is mandatory, even if (1) the prisoner believes they are ineffective, or (2) the available administrative process cannot grant the desired

---

[1] Failure to exhaust administrative remedies constitutes an affirmative defense. Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004).  Thus, the defendant bears the burden of pleading and proving it on a motion for summary judgment.

remedy.  Booth v. C.O. Churner, 532 U.S. 731, 739-41 (2001). Remedies contained in prison handbooks that are not formally adopted must still be exhausted before a prisoner may file a complaint asserting Section 1983 claims.  Concepcion v. Ways, 306 F.3d 1347, 1355 (3d Cir. 2002).  Further, a prisoner seeking relief that a prison's administrative grievance procedures cannot provide, such as monetary relief, must still exhaust all administrative remedies before commencing an action.  Spruill, 372 F.3d at 227; see Booth, 532 U.S. at 740-41 ("Congress' imposition of an obviously broader exhaustion requirement makes it highly implausible that it meant to give prisoners a strong inducement to skip the administrative process simply by limiting prayers for relief to money damages not offered through administrative grievance mechanisms.").

   A prisoner does not satisfy the PLRA's requirement by attempting to bring grievances to the attention of prison authorities through means other than the established administrative procedures.  See Gagliardi v. United State, No. 06-1288, 2006 U.S. App. LEXIS 24807, at *4 (3d Cir. Oct. 3, 2006) (finding that a prisoner's complaint was properly dismissed because he failed to submit an ARF within the appropriate time frame, even though the prisoner did submit daily sick call requests, placed his complaints in written mail, and had his family and physicians send regular emails to prison officials).

9

Instead, "the determination of whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances, and the waiver, if any, of such regulations by prison officials." Spruill, 372 F.3d at 222.  Accordingly, "compliance with the administrative remedy scheme will be satisfactory if it is substantial."  Nyhuis v. Reno, 204 F.3d 65, 77-78 (3d Cir. 2000).

The Prison, as discussed in more detail supra, has adopted an Inmate Handbook that sets forth a procedure for allowing inmates to submit complaints and suggestions to the Prison's administration.  (Moving Defs. Stmt. of Material Facts, at ¶ 23.) After an inmate submits an ARF stating a complaint or suggestion, the inmate receives a written response from a Prison staff member in the appropriate department.  (Id. at ¶¶ 27-28.)  The Moving Defendants argue that Grant's claims should be dismissed because he did not submit an ARF specifically stating that he was not provided an escort from protective custody to his medical appointments or that the Moving Defendants failed to supervise his medical care.  (Moving Defs. Br., at 8.)  However, in the complaint, Grant notes that he did submit an ARF in April 2005 because he was not being afforded "the prescribed cancer treatment regime and medication" and continued to experience excruciating pain.  (Compl. at ¶ 13.)  Grant alleges that he

10

received a response to the ARF stating, "[o]n April 11, 2005 Mr. Grant was seen by the doctor - April 12, 2005 Emergency Room consultation.  On April 14 & 15th Mr. Grant was a "NO SHOW" for needed Lab work."  (Id. at ¶ 14.)  Thus, although Grant did not set forth all allegations now contained in the complaint in his April 2005 ARF, he did "substantially" comply with the Prison's administrative remedy procedure by submitting an ARF discussing the primary grievance underlying his claims, his allegedly inadequate medical treatment.  See Nyhuis, 204 F.3d at 77-78.  Thus, the Court finds that Grant did exhaust his available administrative remedies prior to commencing this action.

### III. Grant's Claims Against the Moving Defendants

#### A.    Section 1983 and the Eighth Amendment

A plaintiff asserting civil rights violations under Section 1983 must establish that the defendant acted under color of state law to deprive him or her of a right secured by the United States Constitution or the laws of the United States.  Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does not create substantive rights, but instead provides a remedy for the violation of rights created by other federal laws.  Id.; Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

For a plaintiff's Section 1983 claims to survive a motion for summary judgment there must be a genuine issue of fact as to whether the defendant (1) acted under color of state law; or (2)

deprived the plaintiff of a federal right.  Groman, 47 F.3d at 633.  "The color of state law element is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law."  Id. at 638.  Further, officials may be liable under Section 1983 for the acts of those over whom they have supervisory responsibility.  However, civil rights liability cannot be predicated solely on the doctrine of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Personal involvement in the alleged wrong-doing must be shown.  Id.  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence", which must be made with appropriate particularity. Id.; see Thomas v. Independence Twp., 463 F.3d 285, 298 (3d Cir. 2006) (dismissing Section 1983 claims because there were no allegations that the defendants were personally involved through either direction or knowledge and acquiescence with the alleged wrongs); Jetter v. Beard, 130 Fed.Appx. 523, 526 (3d Cir. 2005) (dismissing Section 1983 claims against supervisory defendants because plaintiff did not allege any facts to support a conclusion that those defendants had personal involvement in the medical treatment he received).

Once it has been established that the defendant acted under color of state law, the Court must identify the federal right the defendant allegedly violated.  See Groman, 47 F.3d at 633.  Here,

Grant alleges that the Moving Defendants were deliberately indifferent and grossly negligent with respect to his medical needs. (Compl., at ¶¶ 75-79.) Thus, in effect, Grant alleges that they violated his rights under the Eighth Amendment.

"[D]eliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment, which is applicable to the states through the Fourteenth Amendment, because it constitutes "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993). Accordingly, to succeed on an Eighth Amendment medical-care claim, an inmate must establish that (1) he has a serious medical need, and (2) prison officials were deliberately indifferent to such medical need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A medical need is considered serious if it is one a physician would diagnose as requiring treatment or one that a lay person would easily recognize as needing a doctor's attention. Monmouth County Corr. Inst'l Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Also, if denial or delay causes "unnecessary and wanton infliction of pain", a life-long handicap, or permanent loss, the medical need is considered serious. Id.

"Where prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,

13

deliberate indifference is manifest.'" Lanzaro, 834 F.2d at 343 (internal citations omitted). Deliberate indifference is also manifest when prison officials "erect arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates." See id. at 347 (internal quotations and citations omitted). However, claims of negligence or malpractice are not sufficient to establish "deliberate indifference". Rouse, 182 F.3d at 197; see White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990) ("Mere medical malpractice cannot give rise to a violation of the Eighth Amendment."). Thus, in order to state a cognizable claim for failure to provide medical care in violation of the Eighth Amendment, a prisoner must allege acts or omissions that are sufficiently harmful to offend "evolving standards of decency". Estelle v. Gamble, 429 U.S. 97, 106 (1976).

**B.   Section 1983 and the Eighth Amendment Applied Here**

There is no disputing that Grant's Non-Hodgkin's Lymphoma constitutes a serious medical condition, or that any delay in treating this condition could result in a life-long handicap or permanent loss. See Lanzaro, 834 F.2d at 347. Nevertheless, Grant has failed to show that the Moving Defendants were personally involved with any alleged violation of Grant's constitutional rights. See Rode, 845 F.2d at 1207 (noting that the plaintiff in a Section 1983 action must demonstrate that the

14

defendant was personally involved in the alleged wrong-doing). That the Moving Defendants did not personally respond to Grant's letters and requests to intervene in his medical treatment does not constitute deliberate indifference to medical needs. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (holding that prison administrators could not "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor"); see also Abdul-Karim Ali v. Terhune, 113 Fed.Appx. 431, 437 (3d Cir. Sept. 30, 2004) ("[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."). Accordingly, this Court will enter judgment in favor of the Moving Defendants on Grant's Section 1983 claims because Grant has not alleged that they directed or knew and acquiesced in the alleged wrong-doing. See Thomas v. Independence Twp., 463 F.3d at 298.

   The Court will also enter judgment in favor of the Moving Defendants because Grant has failed, by definition, to bring to this Court's attention any evidence that could conceivably raise any genuine issue of material fact as to these claims. The Moving Defendants assert that Grant did receive continuous

medical treatment and monitoring while he was incarcerated, and was escorted to Saint Francis Medical Center for treatments on several occasions.  (See Moving Defs. Stmt. of Material Facts, at ¶¶ 2, 4, & 12.)  Specifically, Grant (1) received chemotherapy and lab work, (2) was prescribed pain and other types of medications, and (3) was examined by several doctors, including oncologists.  (Id. at ¶¶ 4, 6, 8, 9-10, 12-15, 17, & 19-21.)

The Moving Defendants have met their burden of demonstrating prima facie entitlement to summary judgment on Grant's deliberate indifference claims against them.  In support of the motion, the Moving Defendants have submitted a Statement of Material Facts and a number of documentary exhibits, including Grant's medical records.  (Dkt. entry no. 51.)  Thus, the burden shifts to Grant to show that genuine issues of material fact do exist.  See Anderson, 477 U.S. at 249.  Grant has failed to show that anything in his medical records would have given the Moving Defendants any indication that he might be receiving inadequate treatment.  Further, Grant has not submitted any objections, memoranda, affidavits, or other documents in opposition to the motion for summary judgment. In the complaint, Grant alleges, inter alia, that (1) Cathel's "failure to address [Grant's] letters . . . regarding his cancer treatment regimen, the failure of correctional personal [sic] to provide Correction officers to escort him from prison's close-custody Protective Custody unit to

16

prison clinic . . . for scheduled medical appointments and the failure and refusal of Medical Staff to provide prescribed medication and cancer treatments constituted Deliberate Indifference to [Grant's] medical needs" and "Gross Negligence of [Cathel's] duties and responsibilities", (2) Brown was grossly negligent with respect to his duties to Grant and created an environment of insubordination in the Prison, and (3) Brown was deliberately indifferent to Grant's right to receive adequate medical treatment.  (Compl., at ¶¶ 75-79.)  However, Grant cannot rely on these mere allegations to defeat a motion for summary judgment.  Therefore, the Court finds that entering summary judgment in favor of the Moving Defendants is "appropriate" in the present case.  See Anchorage Assocs., 922 F.2d 168 at 175.

## CONCLUSION

The Court, for the reasons stated supra, will (1) grant the motion, and (2) enter judgment in favor of the Moving Defendants. An appropriate order and judgment will be issued.


    s/ Mary L. Cooper          
**MARY L. COOPER**  
United States District Judge

17